UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-50586
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                        versus

GERRY CARLYLE McSWEEN,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for the
              Western District of Texas
_____

(May 19, 1995)

Before GARWOOD and BARKSDALE, Circuit Judges, and BRAMLETTE,
District Judge.[*]

GARWOOD, Circuit Judge:

        Defendant-appellant Gerry Carlyle McSween (McSween) appeals
his conviction on a conditional plea of guilty to possession with
intent to distribute crack cocaine after the district court denied
his motion to suppress the drugs recovered from under the hood of
his car.  We affirm.

_____

        [*]David Bramlette, United States District Judge for the
Southern District of Mississippi, sitting by designation.

**Facts and Proceedings Below**

On February 26, 1994, Texas Department of Public Safety Officers Ralph Billings (Billings) and Larry Price (Price) stopped McSween for driving 87 mph in a 65-mph zone. As Price conducted a computer check, Billings began to write a speeding ticket. Noticing a cellular phone and radar detector in the car's interior, Billings asked McSween if he could look in the car and trunk. McSween consented, and Billings opened the hatchback. McSween then helped Billings remove, with screwdrivers, the hatchback's interior panels.

Meanwhile, Price had completed his computer check, which indicated that McSween had four prior arrests on narcotics charges. After informing Billings of McSween's record, Price moved to the car's passenger side and asked McSween if he had any objection to his searching the vehicle. McSween consented. While searching the passenger area, Price noticed the smell of burnt marihuana, which he at first suspected was emanating from the ashtray. Finding no drugs in the ashtray or passenger area, Price opened the hood and noticed a red rag sticking out of a hole in the car's fire wall. Price removed the rag and saw in the hole what appeared to be a brown plastic bag. Fingering the bag, Price concluded that it felt like it contained a "small bale" of marihuana. Price then replaced the rag and arrested McSween. After the car was impounded, troopers inspected the hole and found a bag of marihuana and a shoulder sling of crack cocaine.

A grand jury indictment returned March 8, 1994, charged McSween with possession with intent to distribute 50 or more grams

of crack cocaine in violation of 21 U.S.C. § 841(a)(1). McSween moved to suppress the evidence seized from his car, arguing that the officers lacked probable cause and exceeded the scope of his consent. After a suppression hearing, at which McSween did not testify, the district court denied the motion, concluding that the initial stop was justified, that McSween's consent to search was voluntary and the search within its scope, and that the subsequent arrest was supported by probable cause. Thereafter, on May 19, 1994, McSween entered a conditional plea of guilty, preserving the suppression issue for appeal. Fed. R. Crim. P. 11(a)(2). The district court sentenced McSween to 136 months in prison and 5 years of supervised release. McSween now appeals.

### Discussion

McSween argues that the district court erred in denying his motion to suppress because there was neither probable cause nor consent to search under the hood of his vehicle, nor probable cause to arrest him. Viewing the evidence in the light most favorable to the government, the prevailing party, *United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir. 1984), we hold that Price had both probable cause and consent to search the area under the hood of McSween's vehicle. *See United States v. Sutton*, 850 F.2d 1083, 1085 (5th Cir. 1988) (either consent or probable cause may independently support a warrantless vehicle search). We further hold that the officers had probable cause to arrest McSween and to perform a subsequent warrantless search of the car after it was impounded.

3

I.    Probable Cause for the Search

It is well settled that warrantless searches of automobiles are permitted by the Fourth Amendment if the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime. *See United States v. Ross*, 102 S.Ct. 2157, 2164-65 (1982); *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 1331 (1994); *United States v. Kelly*, 961 F.2d 524, 527 (5th Cir. 1992). Whether an officer has probable cause to search a vehicle depends on the totality of the circumstances viewed "in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search." *United States v. Muniz-Melchor*, 894 F.2d 1430, 1438 (5th Cir.), *cert. denied*, 110 S.Ct. 1957 (1990).

It is undisputed that Price had McSween's consent to search inside the passenger compartment of McSween's new rental car. At the suppression hearing, Price testified that, when he entered the car, he noticed "the odor of what I thought was burned marijuana." Price testified that he based this conclusion on his twenty-two years of experience and training in the detection of marihuana by its odor. He further testified that the smell appeared to be coming from the ashtray, but he discovered nothing there or anywhere else inside the vehicle's passenger compartment. He then decided to look under the hood. At this point, Price had smelled but not located marihuana and knew of McSween's four prior arrests on narcotics charges.[1] Together these facts, viewed in light of

_____

[1]    Also, though of at most entirely minimal relevance, McSween had a cellular phone and radar detector.

4

Price's experience, justify a finding of probable cause to search the entire vehicle. Indeed, the smell of marihuana alone may be ground enough for a finding of probable cause, as this Court has held many times. *See, e.g., United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (the officer's detection of marihuana "in itself . . . justified the subsequent search of [the defendant's] vehicle"); *United States v. Henke*, 775 F.2d 641, 645 (5th Cir. 1985) ("Once the officer smelled the marijuana, he had probable cause to search the vehicle."); *United States v. Gordon*, 722 F.2d 112, 114 (5th Cir. 1983) (same); *United States v. McLaughlin*, 578 F.2d 1180, 1183 (5th Cir. 1978) (same).

McSween contends that, even if the odor of marihuana gave Price probable cause to search, the search should have been limited to the passenger area, where Price detected the smell. We disagree. It is well settled that, in a case such as this, the detection of the odor of marihuana justifies "a search of the entire vehicle." *Reed*, 882 F.2d at 149. As the Supreme Court stated in *Ross*, "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 102 S.Ct. at 2173. *See also United States v. Johns*, 105 S.Ct. 881, 884 (1985). The Court further observed that, if there is probable cause to suspect that the vehicle contains contraband, then the search may extend not only to closed containers, but also to a "car's trunk or glove compartment." *Ross*, 102 S.Ct. at 2172. The same reasoning applies to the area under the hood, where drugs

may also be concealed.[2]  We therefore reject McSween's contention that Price lacked probable cause to search under the hood of his rental car.[3]

II.  Consent for the Search

In the alternative, we agree with the district court that the search under the hood was within the scope of McSween's consent. Under the Fourth Amendment, "[t]he standard for measuring the scope of a suspect's consent . . . is that of `objective' reasonablenessSQwhat would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 111 S.Ct. 1801, 1803-04 (1991).  McSween argues

---

[2]      This is simply not a case such as *United States v. Chadwick*, 97 S.Ct. 2476 (1977), or *Arkansas v. Sanders*, 99 S.Ct. 2586 (1979), in which the officers had probable cause to believe that narcotics were stowed in a particular container (a footlocker in *Chadwick*, a green suitcase in *Sanders*) but did not have probable cause to search the automobiles in which the containers were later placed:

> "[I]t was the *luggage* being transported by respondent at the time of the arrest, not the automobile in which it was being carried, that was the suspected locus of the contraband.  The relationship between the automobile and the contraband was purely coincidental, as in *Chadwick*." *Ross*, 102 S.Ct. at 2167 (quoting *Sanders*, 99 S.Ct. at 2594 (Burger, C.J., concurring)).

In *Ross*, the Supreme Court clearly limited these two cases to their facts, *Ross*, 102 S.Ct. at 2165-67, 2172, and overruled an earlier plurality opinion in *Robbins v. California*, 101 S.Ct. 2841 (1981), as an incorrectly broad interpretation of them.

[3]      Although the district court rested the constitutionality of the warrantless search on McSween's consent, we can affirm the lower court's decision on any grounds supported by the record. *Bramblett v. Commissioner of Internal Revenue*, 960 F.2d 526, 530 (5th Cir. 1992).  On the facts as found by the district court (or established without dispute in the record), the question of probable cause is a question of law.  *See Blackwell v. Barton*, 34 F.3d 298, 305 (5th Cir. 1994).

that his consent to search should be construed to extend only to the trunk and passenger areas and not to the area under the hood.[4] In his brief, McSween contends that the troopers' wordsSQtheir requests to "look in" the car and trunkSQwould indicate to a reasonable person that the search was so limited. At oral argument, however, McSween conceded that he did not draw a distinction between a request to "look in" a car and one to "search" it.

Viewing the testimony at the suppression hearing in the light most favorable to the government, we conclude that Price asked McSween for general permission to search his vehicle. Price testified, "I asked . . . if . . . [McSween] had any objection of [sic] me searching his vehicle." Asked then if that was "more or less the language . . . used," Price responded, "Yes." Even if Price actually asked to "look in" McSween's vehicle, we would still conclude that in these circumstances Price effectively asked for a general consent to search. In *United States v. Crain*, 33 F.3d 480 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1142 (1995), this Court held "that an individual's consent to an officer's request to `look inside' his vehicle is equivalent to general consent to search the vehicle and its contents . . . ." *Id.* at 484; *see also Rich*, 992 F.2d at 506. We therefore conclude that Price asked for and

---

[4] McSween does not contest the district court's finding that the consent in this case was voluntary. Nor does McSween challenge any other factual findings made by the district court. The only remaining question, the scope of consent, is considered a question of law in this Circuit and is, accordingly, reviewed *de novo*. *United States v. Rich*, 992 F.2d 502, 505 (5th Cir.), *cert. denied*, 114 S.Ct. 348 (1993).

received from McSween general consent to search the vehicle.

The question, then, is whether it was reasonable to interpret McSween's general oral consent to search the car as authority to search under the hood. Although the "scope of a search is generally defined by its expressed object," *Jimeno*, 111 S.Ct. at 1804, the officers here never told McSween the purpose of their search. The failure to specify the object of the search, however, is not dispositive if the circumstances could otherwise lead a reasonable person to conclude that the search might include the area under the hood. In *Crain*, the defendant argued that, because the officers never indicated the purpose of their search, an objectively reasonable person would not consider their consent to include the opening of a "closed paper bag shoved under the [car's] seat." 33 F.3d at 484. Rejecting this argument, we held that a general consent to search a car includes consent to open a paper bag inside it, at least when the defendant does not attempt to limit the scope of the search. *Id.; accord United States v. Snow*, 44 F.3d 133, 135 (2d Cir. 1995). As in *Crain*, although the officers here made a general request for a search without identifying their objective, McSween never objected to the scope of the search.[5]

_____

[5] McSween did not testify at the suppression hearing. Defense counsel, however, suggested that it may have been difficult for McSween to object because of the speed and obscurity of the search. The district court did not clearly err in finding this suggestion incredible, especially as counsel's claim is pure hypothesis. The only evidence at the hearing related to this claim supports the district court's finding. Billings, who was standing with McSween at the rear of the vehicle during Price's search, testified that he was aware Price had opened the hood and was searching that area. In any event, as we stated in *Rich*,

8

In such circumstances, a failure to object to the breadth of the search is properly considered "an indication that the search was within the scope of the initial consent." *United States v. Cannon*, 29 F.3d 472, 477 (9th Cir. 1994) (citation and internal quotation marks omitted). As this Court stated in *Rich*, the defendant, as the individual "knowing the contents of the vehicle," has the "responsibility to limit the scope of the consent." *Rich*, 992 F.2d at 507. Because McSween knew at the time of the search what the fire wall hid, he should have limited his consent, "if he deemed it necessary to do so," *id.*, to clarify any ambiguity from which he now seeks to benefit. Further supporting this conclusion is the fact that McSween gave Price his consent after helping Billings remove interior panelling in the hatchback. This sort of behavior could indicate to a reasonable officer that McSween meant to consent to more than a superficial search of his vehicle.[6]

In *United States v. Sierra-Hernandez*, 581 F.2d 760 (9th Cir.), *cert. denied*, 99 S.Ct. 333 (1978), the Ninth Circuit confronted a factually indistinguishable situation. There, the defendant gave the officer permission to "look inside" his truck. After searching

---

"[W]e are unwilling to read *Jimeno* to hold . . . that enforcement officials must conduct all searches in plain view of the suspect, and in a manner slowly enough that he may withdraw or delimit his consent at any time during the search." *Rich*, 992 F.2d at 507.

[6]    This case is not one in which the officers interpret a general consent to search the vehicle as authority to inflict damage on the vehicle or its contents. *United States v. Strickland*, 902 F.2d 937, 941-42 (10th Cir. 1990); *cf. Jimeno*, 111 S.Ct. at 1804 ("It is very unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag.").

9

the truck's cab and cargo areas, the officer opened the hood and found marihuana.  In his motion to suppress, the defendant argued that the officer exceeded the scope of his consent when he opened the hood.  The district court denied the motion, and the Ninth Circuit affirmed.  The court determined that the defendant's permission to search both the cab and cargo areas, combined with his failure to object to the continuation of the search under the hood, made the evidence admissible.[7]  We believe the same result should obtain here.

## III. Probable Cause for the Arrest and Subsequent Search

McSween next argues that the officers lacked probable cause to arrest him, impound the vehicle, and conduct a further search. McSween claims that the cocaine should be suppressed "because the only thing that was determined during the . . . search on the highway was that there was an object wrapped in plastic in the hole under the hood."  An officer has probable cause for an arrest when "the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *United States v. Walker*, 960 F.2d 409, 416 (5th Cir.), *cert. denied*, 113 S.Ct. 443 (1992).  With the knowledge that McSween had four prior arrests on narcotics charges and that the interior of his car smelled of burnt marihuana, Price opened the hood and found a

---

[7]     McSween attempts to distinguish this case by arguing that here there were circumstances that would make a reasonable officer realize the "initial consent" was limited.  As pointed out earlier, however, the consent given in this case authorized a general search of the car.

plastic bag hidden behind a rag in the fire wall of a new rental car.[8] Price testified that, after touching the bag and looking at it, he concluded that, based on his experience, it "felt" like it contained a "small bale" of marihuana. Given these circumstances, Price had probable cause for the arrest.

Finally, we must reject McSween's suggestion that, even if the arrest and initial search were supported by probable cause, the second search of the car at the sheriff's office, where the cocaine was discovered, required a warrant. If probable cause justified a warrantless search on the roadside, it likewise justified one at the station after the car was impounded. *See Ross*, 102 S.Ct. at 2163-64 n.9 ("[I]f an immediate search on the street is permissible without a warrant, a search soon thereafter at the police station is permissible if the vehicle is impounded.").

## Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[8] When asked whether he thought there was anything unusual about a rag sticking out of a fire wall, Price testified, "A brand-new vehicle like that, a rental car, it was unusual that you would see a rag stuffed in behind there, I felt it was."

11