**STATE of Iowa, Appellee,**

v.

**Brian Matthew McCONNELEE,
Appellant.**

No. 03–0989.

Supreme Court of Iowa.

Dec. 10, 2004.

John J. Hines of Dutton, Braun, Staack, Hellman, P.L.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, Cris Odell Douglass, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Brad Walz, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Brian McConnelee, appeals from his conviction of various drug charges, alleging trial court error in several particulars. Because our resolution of McConnelee's challenge to the district court's ruling on his motion to suppress is dispositive, we limit our decision to a discussion of that issue.

I. *Background Facts and Proceedings.*

While driving a friend's car on the afternoon of February 9, 2002, McConnelee was stopped by an Evansdale police officer who noticed some minor equipment violations. At the time of the stop, the officer activated a video camera located on his patrol vehicle. Conversations were recorded through the officer's body microphone and a squad car microphone.

While talking to the defendant, the officer noted a small quantity of leafy-like material on top of the car stereo. When questioned, McConnelee maintained the substance was tobacco, and he began to sweep it off the stereo. The officer then asked McConnelee to get out of the vehicle, and the defendant complied.

After a pat-down search of the defendant accompanied by a brief conversation (the content of which was later disputed), the officer returned to the defendant's car. The officer first determined the substance on top of the stereo was in fact tobacco; he then began to search the vehicle. After finding a marijuana pipe in the console between the front seats, the officer placed the defendant in the squad car and expanded his search of the car. Upon opening a black bag that was on the front passenger seat, the officer discovered baggies containing green, leafy plant material, baggies containing a white powdery substance, a baggy containing a white powder residue, a large digital scale, and other drug paraphernalia. The substances in the baggies were later confirmed to be marijuana and methamphetamine.

The State charged McConnelee with possession of more than five grams of methamphetamine with the intent to deliver in violation of Iowa Code section 124.401(1)(*b*)(7) (2001); failure to affix a drug tax stamp in violation of Iowa Code section 453B.12; possession of marijuana in violation of Iowa Code section 124.401(5); and possession of drug paraphernalia in violation of Iowa Code section 124.414. The defendant filed a motion to suppress the evidence discovered in the search of his vehicle. He claimed the

search was not consensual, the contraband was not in plain view, and there was no other basis upon which the officer could constitutionally search the car. After a hearing, the district court overruled the defendant's motion, concluding a gesture made by the defendant toward his car at the time of the pat-down search was sufficient to grant consent to search his vehicle. The court supported its conclusion with the fact the defendant did not question the extent of the officer's subsequent search or lodge any objection to the officer's actions.

The case against the defendant proceeded to trial and a jury found him guilty of all charges. After sentencing, McConnelee filed this appeal, raising several issues. We address only one: whether the district court erred in failing to suppress evidence obtained as a result of the search of McConnelee's vehicle.

## II. *General Principles.*

■ Because the defendant's suppression motion was based on a claimed constitutional violation, our review "is de novo in light of the totality of the circumstances." *State v. Walshire,* 634 N.W.2d 625, 626 (Iowa 2001). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *State v. Turner,* 630 N.W.2d 601, 606 (Iowa 2001).

The defendant's motion to suppress was based on an alleged violation of his right under the federal and state constitutions to be free of unreasonable searches and seizures. *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8. He relies on the exclusionary rule, which provides that evidence obtained in violation of this constitutional protection is inadmissible at trial. *State v. Breuer,* 577 N.W.2d 41, 45 (Iowa 1998). Because McConnelee makes no argument that the federal and state constitutions

should be interpreted or applied differently for purposes of his motion, our discussion applies to both constitutional claims. *See In re Detention of Garren,* 620 N.W.2d 275, 280 n. 1 (Iowa 2000).

■ A warrantless search violates the Fourth Amendment "unless it falls within a recognized exception." *State v. Cline,* 617 N.W.2d 277, 282 (Iowa 2000), *overruled on other grounds by Turner,* 630 N.W.2d at 606 n. 2. Exceptions include: "(1) consent to search; (2) the presence of probable cause and exigent circumstances; (3) objects in plain view; or (4) search conducted incident to a lawful arrest." *State v. Bergmann,* 633 N.W.2d 328, 338 (Iowa 2001). "The State has the burden to prove by a preponderance of the evidence that the search falls within an exception." *Cline,* 617 N.W.2d at 282. The State relies on the consent and exigent circumstances exceptions to support the trial court's suppression ruling in this case.

## III. *Consent.*

■ Consent may be express or implied. *State v. Reinier,* 628 N.W.2d 460, 465 (Iowa 2001). It may take a verbal form, or be found in gestures or other non-verbal conduct. *Id.* at 467. In addition, consent to a search may be limited or qualified. *United States v. Ho,* 94 F.3d 932, 936 n. 5 (5th Cir.1996); *State v. Myer,* 441 N.W.2d 762, 765 (Iowa 1989). Law enforcement authorities conducting the search are constrained by such limitations or qualifications. *Myer,* 441 N.W.2d at 765; *State v. Kelly,* 284 N.W.2d 236, 238 (Iowa 1979) (stating officers' right to search is only coextensive with consent given). The scope of consent is determined by what a "typical reasonable person [would] have understood by the exchange between the officer and the suspect." *Florida v. Jimeno,*

500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297, 302 (1991).

In the matter before us, the defendant does not dispute that he gave some form of consent to the officer to search his car; it is the breadth of that consent that is at issue. Although it would seem the videotape would establish the precise contours of the defendant's consent, the conversation between the defendant and the police officer is difficult to hear at times. In addition, the parties disagree on the meaning to be attached to a gesture made by the defendant in giving consent to search.

The defendant claims that after he exited the vehicle, the officer referred to "the leafy stuff," and the defendant responded that "it was nothing, just tobacco and he [the officer] could check it to see." The defendant then gestured toward the front of the car with his left arm. He claims the scope of his consent was limited to checking the nature of the leafy substance that had caught the officer's attention. Once the officer confirmed the substance was tobacco, asserts the defendant, the officer had no authority to continue to search the vehicle.

The State claims the videotape confirms a broader consent. The State argues that when the officer and the defendant were standing at the rear of the vehicle, the officer asked the defendant whether the defendant had "anything he shouldn't have." According to the State, the defendant then gestured toward the front of the car, stating the officer can search it. The State's interpretation of the videotape was bolstered at the suppression hearing by the police officer's testimony. The officer testified the defendant consented to the search. The officer stated that when he—the officer—referred to the "leafy substance," the defendant began speaking at the same time and said, "it's nothing, check the whole car," extending his arm toward the front of the car. The defendant took the stand at the suppression hearing and repeatedly denied that he gave the officer permission to search the whole car.

■ On our de novo review, we do not think the State has carried its burden to prove consent. The court has viewed the videotape made of the conversation at issue and concludes it is most consistent with the defendant's version of what occurred. While it is certainly possible that the recording did not pick up the entire conversation between the defendant and the officer, we are not persuaded that the officer's recollection of what the defendant said is consistent with what can be confirmed by the videotape or with our understanding of human behavior.

■ It appears from the videotape that the defendant, in response to the officer's reference to the "leafy substance," said that it was nothing and then, gesturing toward the open car door, added that the officer could "check it." Even when considered in combination with the defendant's gesture toward the front of the car, McConnelee's statement did not give the officer unrestricted permission to search the entire vehicle. *Cf. United States v. Cotnam*, 88 F.3d 487, 495 (7th Cir.1996) (holding while defendant's gesture was sufficient to indicate consent to enter defendant's home, "inviting someone into the foyer of one's home is not an invitation or a consent to search the house"). Moreover, it is clear from the tape, and the officer admitted, that the officer did not directly ask the defendant for permission to search the entire car. Considering their conversation was limited to the nature of the leafy substance that was in plain view, we think it unlikely that the defendant would respond to the officer's comments with an unsolicited invitation to the officer to "search the whole car." *See*

*Reinier,* 628 N.W.2d at 467 (relying on unlikelihood that occupant would invite strangers into home in concluding defendant had not consented to plainclothes officers' entry into enclosed porch); *State v. Ege,* 274 N.W.2d 350, 353 (Iowa 1979) (stating court should consider the totality of the circumstances in evaluating consent). Even though the defendant's failure to object to the scope of the officer's search is an indication the search was within the initial consent, the natural reluctance of a citizen to interfere with an officer is an equally likely explanation for the defendant's silence. *See generally United States v. McSween,* 53 F.3d 684, 688 (5th Cir.1995) (considering defendant's failure to object to breadth of search as indication that search was within scope of initial consent). Therefore, we conclude from the totality of the circumstances a reasonable person would have understood that McConnelee's consent was limited to the officer's examination of the leafy substance on the stereo.

Given the limited nature of the defendant's consent to the search of his vehicle, the police officer had no authority to go beyond an examination of the leafy material on the car stereo. *See Jimeno,* 500 U.S. at 251, 111 S.Ct. at 1804, 114 L.Ed.2d at 303 ("The scope of a search is generally defined by its expressed object."); *United States v. Zertuche–Tobias,* 953 F.Supp. 803, 825 (S.D.Tex.1996) (holding consent to search inside of envelope could not be implied from defendant's failure to object to officer's search of envelope when initial consent extended only to retrieving envelope from car). Once the officer had confirmed this substance was indeed tobacco, he could not constitutionally expand the search into other areas of the vehicle unless another exception to the warrant requirement applied. *See Bergmann,* 633 N.W.2d at 337–38 (holding once purpose of initial stop was satisfied, there must be additional basis to expand the search). This conclusion brings us to the State's fallback position—that the search is supportable by probable cause and exigent circumstances.

IV. *Probable Cause and Exigent Circumstances.*

 Law enforcement may dispense with the warrant requirement "when there is probable cause for the search, and exigent circumstances necessitate an immediate search." *State v. Gillespie,* 619 N.W.2d 345, 350 (Iowa 2000), *overruled on other grounds by Turner,* 630 N.W.2d at 606 n. 2. "A police officer has probable cause to search an automobile 'when the facts and circumstances would lead a reasonably prudent person to believe that the vehicle contains contraband.'" *Id.* at 351 (citation omitted).

 The record here shows the defendant was cooperative when stopped and questioned by the police officer and was not evasive in his answers. Moreover, there was no evidence that he acted nervous or appeared to be under the influence of an intoxicant or drug. The only circumstances cited by the State to support its contention probable cause existed were the presence of the suspicious leafy substance on the car stereo and the defendant's "evasive action" in trying to sweep it away. While these facts may have justified an examination of the substance on the stereo, they do not support an expansion of the officer's search to the console between the front seats and beyond. As the United States Supreme Court has said, "The police may search an automobile and the containers within it *where they have probable cause to believe contraband or evidence is contained." California v. Acevedo,* 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619, 634 (1991) (emphasis added).

Here, once the officer confirmed the leafy substance was exactly what the defendant said it was—tobacco—there were no circumstances to indicate the presence of contraband in the console or in the vehicle in general. Any search beyond this point in time was not supported by probable cause.

## V. *Conclusion and Disposition.*

We conclude the State has not met its burden to prove the defendant consented to a search of the entire vehicle. In addition, there was not probable cause to extend the search beyond an examination of the leafy material observed by the police officer. Therefore, the officer's search of the console and other containers in the vehicle violated the defendant's constitutional right to be free of unreasonable searches and seizures. Consequently, the evidence obtained in the officer's search of the vehicle should have been excluded by the trial court.

■■■■■ This constitutional error does not require reversal if the State establishes beyond a reasonable doubt that the error in admitting the evidence obtained from the unlawful search was harmless. *State v. Canas*, 597 N.W.2d 488, 493 (Iowa 1999), *overruled on other grounds by Turner*, 630 N.W.2d at 606 n. 2.

There are two steps in the harmless error analysis. We first consider all of the evidence the jury actually considered, and then we weigh the probative force of that evidence against the erroneously admitted evidence. The inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.

*Id.* at 494 (emphasis and citations omitted). Here the only evidence of the defendant's possession of marijuana, methamphetamine, and drug paraphernalia were those items seized from the defendant's vehicle as a result of the unconstitutional search. Given the State's lack of other evidence to support the defendant's conviction, we cannot say the error in admitting the illegally seized evidence was harmless.

We reverse the judgment of conviction and remand for a new trial in which the evidence seized from the defendant's vehicle is excluded.

**REVERSED AND REMANDED.**